UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIS POLLARD,<br><br>*Plaintiff,*<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br><br>*Defendant.* | Case No. 2019-cv-03099 (ABJ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE DISTRICT OF COLUMBIA'S MOTION FOR SUMMARY JUDGMENT**

**BACKGROUND AND RELEVANT FACTS**

**I.      DC FEMS' Grooming Policy**

Consistent with federal regulations, national standards, and manufacturer requirements, the District of Columbia's Fire and Emergency Medical Services (DC FEMS) requires its firefighters who work in operations[1] to be clean-shaven.  SOMF ¶ 1; Ex. 1, DC FEMS Safety Bulletin 10; Ex. 2, Kahatapitiya Expert Report, at 1.  Facial hair at any length interferes with the best possible seal between a firefighter's face and the masks they must wear when in operations (or field duty).  Ex. 2, Kahatapitiya Expert Report, at 1.  A tighter fit reduces air leakage, which better supports clean air intake, and provides the best protection from soot/black carbon, fumes, and other hazardous or toxic air pollutants (such as asbestos) that populate the atmosphere in which firefighters typically work.  Ex. 2, Kahatapitiya Expert Report, at 4; Ex. 3, Kahatapitiya Supplemental Report, at 1; Ex. 16, Kahatapitiya Dep. 27:19-22.

---

[1]    Operations personnel perform standard firefighting and emergency medical service duties and must don respirators to protect them from contaminants in the ambient air.  Ex. 2, Kahatapitiya Expert Report, at 4

The National Institute for Occupational Safety and Health (NOSH) has found that firefighters should be clean shaven when donning their respirators because this provides greater air capacity and lessens the risk of exposure to toxicants, and the Occupational Health and Safety Administration (OSHA) has published regulations requiring firefighters to be clean shaven for this same reason.  SOMF ¶ 2; Ex. 3, Kahatapitiya Supplemental Report at 2.

## II.     DC FEMS' Respirators

DC FEMS firefighters are required to wear a self-contained breathing apparatus (SCBA) when they will be exposed to "immediately dangerous to life or health" (IDLH) environments. SOMF ¶ 3; Ex. 2, Kahatapitiya Expert Report, at 3.  The SCBA is a positive pressure respirator that provides air through a cylinder worn on the firefighter's back that connects to their mask. SOMF ¶ 4; Ex. 3, Kahatapitiya Supplemental Expert Report, at 2.   Positive pressure respirators force fresh, clean air into the mask, Ex. 2, Kahatapitiya Expert Report, at 3, whereas negative pressure respirators filter contaminants from the ambient air before the air enters the firefighter's respiratory system.  Ex. 3, Kahatapitiya Supplemental, at 2.  A tight-fitting mask is also necessary for negative pressure respirators to ensure that contaminants from outside the mask do not pass through the seal and enter the firefighter's respiratory system.  SOMF ¶ 7; Ex. 3, Kahatapitiya Supplemental, at 2.  Negative pressure respirators cannot be used in IDLH environments.  SOMF ¶ 6; Ex. 2, Kahatapitiya Expert Report, at 3.

 On September 27, 2021, DC FEMS acquired hooded PAPR respirators.  SOMF ¶ 14; Ex. 4, Egan Dep. 200:17-201:5.  If the hooded PAPR is the appropriate respirator for the environment in which the firefighter will be working, they can wear a beard, and they do not have to take a fit test.  SOMF ¶ 15; Ex. 2, Kahatapitiya Expert Report, at 3; Ex. 4, Egan Dep.

2

200:17-201:5.  Hooded PAPR respirators cannot be worn in environments that require a SCBA. SOMF ¶ 16; Ex. 2, Kahatapitiya Expert Report, at 3.

### III. DC FEMS' Safety Testing

DC FEMS firefighters working in operations must pass a fit test annually.  SOMF ¶ 8; Ex. 4, Egan Dep. 61:4-5.  A fit test measures the amount of air from the outside a firefighter's mask in relation to the air inside, or the degree of leakage between the firefighter's face and mask.  SOMF ¶ 9.[2]  There are five steps to the fit test: (1) firefighters face forward and breathe for eight seconds, (2) then bend at the waste for eight seconds, (3) then shake their head for eight seconds, (4) then they take the mask off, and (5) then put the mask back on.  The fit test machine records a fit factor for each step of the test.  SOMF ¶ 10; Ex. 5, Gillium Dep. 20:3-13; Ex. 4, Egan Dep. 106:7-10, 162:6-15; Ex. 6, Pollard Failed Fit test.  The score for each factor must be at least 500 for the firefighter to pass the test.  SOMF ¶ 11; Ex. 6, Pollard Failed Fit test. Firefighters are tested as many times as needed until they pass the fit test.  SOMF ¶ 12; Ex. 4, Egan Dep., 43:5-20.  Each firefighter must carry a wallet-sized card showing that they passed the fit test within the last twelve months.  SOMF ¶ 13; Ex. 4, Egan Dep., 46:14-16; Ex. 7, Fit test Card.

### IV. Pollard's Challenge to DC FEMS' Grooming Policy

Plaintiff Ellis Pollard began working for DC FEMS as a firefighter in October 2003 and was later promoted to a firefighter technician.  SOMF ¶ 17; Am. Compl. ¶¶ 7-8.  Pollard converted to Islam in 2012.  SOMF ¶ 18; Ex. 8, Pollard Dep. 12:11-14.  Pollard maintains that

---

[2] The Respiratory Protection Information Trusted Source: Fit Test FAQs, Centers for Disease Control and Prevention, https://www.cdc.gov/niosh/npptl/topics/respirators/disp_part/respsource3fittest.html (last visited Apr. 3, 2022).

3

his Muslim faith requires him to wear a full beard without exception. SOMF ¶ 19; Am. Compl. ¶ 9; Ex. 8 Pollard Dep. 16:3-13.

On September 17, 2017, Pollard reported to the mask room for his annual fit test which he failed. SOMF ¶ 20; Am. Compl. ¶ 21; Ex. 6. Pollard Failed Fit Test. Because Pollard could not pass his fit test, Fire Chief Gregory Dean removed him from operations. SOMF ¶ 21; Ex. 9, Dean Dep. 15:21-16:5, 23:18-24:7. However, DC FEMS continued to pay Pollard the same hourly rate that he was earning in operations. SOMF ¶ 22; Am. Compl. ¶ 21; Ex. 8, Pollard Dep. 163:7-8.

Pollard was fit tested again by DC FEMS after he was removed from operations but did not pass those tests. SOMF ¶ 23; Ex. 8, Pollard Dep. 143:3-19. DC FEMS tried to help Pollard pass the fit test by testing him with "every size mask that the manufacturer provides," and even called the manufacturer to determine whether the manufacturer had any other type of mask that Pollard could use. SOMF ¶ 24; Ex. 10, Foust Dep. 12:14-13:3.

On October 28, 2020, Pollard was tested at the Fairfax County Fire Department while wearing AV2000 mask. SOMF ¶ 25; Ex. 11, Fairfax Fit Test; Ex. 12, Joplin Dep. 62:3-10. His passing score from Fairfax County is irrelevant because DC FEMS no longer uses the AV2000 mask and Fairfax has not used it for ten years. SOMF ¶ 26; Ex. 11, Fairfax Fit Test; Ex. 12, Joplin Dep. 42:9-10; Ex. 4, Egan Dep. 92:15-21, 166:19-167:9. Moreover, DC FEMS has reciprocity with other jurisdictions. SOMF ¶ 27; Ex. 4, Egan Dep. 92:15-21, 166:19-167:9.

On November 15, 2021, Pollard was invited to apply for an accommodation where he could return to operations, continue to wear his beard, be excused from fit testing, and use the hooded PAPR respirator but for safety reasons he cannot work in atmospheres that require him to wear a SCBA. SOMF ¶ 28; Ex. 13, Return to Operations Offer. Pollard applied for and was

granted a religious accommodation and was returned to operations to work on a transport unit, or ambulance on March 1, 2022.  SOMF ¶ 29; Ex. 14, Email from Shawn Downs to Ellis Pollard (Mar. 1, 2022, 12:48 p.m.).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) "must be construed with due regard not only for the rights of the non-movant . . . but also for the rights of the moving party to demonstrate in the manner provided by the Rule, prior to trial, that the claims . . . have no factual basis." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  By the very nature of the language of Rule 56(c), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Thus, a court should grant summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Indeed, "[a] moving party is 'entitled to judgment as a matter of law' against 'a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Waterhouse v. District of Columbia*, 298 F.3d 989, 992 (D.C. Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. at 332).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby, Inc.*, 477 U.S. 249-50.  Applying these standards to this case, the Court should grant summary judgment in the District's favor.

**ARGUMENT**

I.       *Potter, et al., v.  District of Columbia* **is Distinguishable from this Case**

The record here distinguishes this case from *Potter v. District of Columbia*, 558 F.3d 542 (D.C. Cir. 2009) in which firefighters whose religious beliefs required them to wear beards, sued over DC FEMS grooming policy because they were removed from operations.  The Court did not determine the right balance between protecting the firefighters' religious beliefs and DC FEMS' grooming policy because there was insufficient evidence in that record to show that it was dangerous for firefighters with beards to don the self-contained breathing apparatus (SCBA).  *Id.*, at 544.  Indeed, a DC FEMS fire safety officer misinformed the trial court by testifying that because the SCBA is a positive pressure respirator, leakage resulting from any gap between the face and the facepiece will not harm the firefighter because "the air will then move out from the inside of the face piece protecting the wearer from toxic atmospheres.'" *Id.* at 547.  That is simply wrong.  In addition, the Circuit noted "none of the District of Columbia's pleadings or oral argument in the district court . . . argued that cannister depletion is a safety concern, or indeed a concern at all." *Id*. at 550.  It was also accepted, but patently false, that a firefighter can easily switch from one respirator to another or that deployment of firefighters wearing the appropriate respirator can be substituted for those who are not.  *Potter,* 558 F.3d, at 553 (Williams, J. concurring).

On appeal the District argued that donning a SCBA with a beard did, in fact, pose a safety risk and that air depletion is a concern.  *Potter*, 558 F.3d at 547.  But the D.C. Circuit did not permit the District to take a position on appeal that it failed to develop at the trial court level.  *Id.*  The Circuit affirmed the trial court's ruling granting summary judgment in the plaintiffs' favor and ordered the District to reinstate the plaintiffs to operations.  The injunction prohibiting

DC FEMS from enforcing its grooming policy against the *Potter* plaintiffs remains to this day. *Id.* The District should not have conceded that a bearded firefighter could safely don the SCBA at the trial court level because that opinion was wrong, contrary to existing scientific research, unsupported by the District's expert then,[3] and unsupported by the District's expert now. *See generally*, Ex. 2, Kahatapitiya Expert Report.

Importantly, this case does not contain the same factual or procedural defects that the D.C. Circuit identified in *Potter*. In this case, the District has been steadfast in its position that its grooming policy is essential for firefighters in operations. The District's expert, Stacy Kahatapitiya, opined that positive pressure respirators, like the SCBA, "can have leakage paths that can cause aspiration of the outside atmosphere," and that leakage through the face piece can cause air cylinders to deplete faster than normal. Ex. 2, Kahatapitiya Expert Report 4. She also concluded that:

> [d]espite SCBAs being positive-pressure systems, the effectiveness of these systems in protecting workers relies on the proper fit and seal of the facepiece to the wearer's face, which is why national standards (both regulatory and industry) require firefighters to be clean-shaven or at a minimum, not have facial hair at the seal of the facepiece to the face.

*Id.* at 6.

The District's evidence here shows that a bearded firefighter cannot safely don the SCBA. To the extent that the District took a different position in past litigation, that position has not been advanced in this case because it is contrary to national safety standards. Indeed, in his concurring opinion, Judge Williams noted that reversing the trial court's ruling granting the

---

[3] The District's expert in *Potter* had signed a declaration explaining why wearing a beard and donning a SCBA was unsafe. Perhaps through some procedural error that evidence did not make its way into the trial court record.

plaintiffs' motion for summary judgment would have been appropriate "[i]f the sole aim of the law were an open search for truth," but "[the District's] muddled litigation strategy rendered summary judgment for the plaintiffs a legitimate outcome." *Potter*, 558 F.3d, at 551.

## II.     **The District is Entitled to Summary Judgment on Pollard's RFRA Claims**.

Under the RFRA a "[g]overnment may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person - (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b).  "The least-restrictive-means standard is exceptionally demanding . . . ." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 728 (2014).  "A statute or regulation is the least restrictive means if 'no alternative forms of regulation would [accomplish the compelling interest] without infringing [religious exercise] rights.'" *Kaemmerling v. Lappin*, 553 F.3d 669, 684 (D.C. Cir. 2008) (*quoting Sherbert v. Verner*, 374 U.S. 398, 407 (1963)).  Because removing Pollard from operations was the least restrictive means to protect Pollard's safety his RFRA claim fails.[4]

Federal regulations prohibit a worker from wearing "facial hair [that] comes between the sealing surface of the facepiece and the face or that interferes with valve function."[5]  29 CFR § 1910.134(g)(1)(i)(A).  DC FEMS follows this regulation, and the regulation is also consistent with NIOSH standards.  SOMF ¶ 2; Ex. 2, Kahatapitiya Expert Report, at 1.  "In order for any provided respiratory protection to be effective, the facepiece must provide a proper seal for the

---

[4]     To the extent Pollard's claim is based on DC FEMS allegedly denying him the ability to wear a Kufi and wear his pants above his ankles, those issues are moot because Pollard testified in his deposition that contrary to what he alleges in his complaint, he is permitted to wear his Kufi and his pants above his ankles.  Ex. 8, Pollard Dep. 54:8-18, 159:13-19.

[5]     *Bey v. City of New York* found that providing an employee an accommodation that would exempt them from this regulation was not a reasonable accommodation under the Americans with Disabilities Act.  999 F.3d 157, 168 (2d Cir. 2021).

user to ensure that contaminants do not enter the facepiece and become inhaled by the user." Ex. 2, Kahatapitiya Expert Report, at 3. A person with facial hair cannot maintain a tight seal between his face and the respirator's facepiece. Respiratory Protection Regulations for Occupational Health and Safety Administration, 63 Fed. Reg. 1,237 (Jan. 8, 1998). The OSHA standard is based on peer-reviewed studies of quantitative data. 63 Fed. Reg. 1,237 (*citing* E.C. Hyatt et. al., *Effect of Facial Hair on Respirator Performance*, 34 Am, Ind. Hyg. Assoc. J. 135-142 (1973) (Concluding that "persons with excessive facial hair such as facial stubble, sideburns, and beards which interfere with the respirator seal, cannot expect to obtain as high a degree of respirator performance as persons who are clean shaven."); M.K. McGee & R.K. Oestenstad, *The Effect of the Growth of Facial Hair on Protection Factors for one Model of Closed-Circuit, Pressure-Demand, Self-Contained Breathing Apparatus* 44 Am, Ind. Hyg. Assoc. J. 480-484 (1983) (concluding that increased beard growth has a "profound negative impact" on the fit of the respirator); O.T. Skretvedt & J.G. Loschiavo, 45 Am, Ind. Hyg. Assoc. J 63-66 (1984) ("Results indicate that the presence of a beard greatly increases the leakage through the respirator face seal, and this leakage should not be permitted when employees are required to wear respirators").

   Firefighters can be exposed to IDLH environments while responding to certain calls and must don a SCBA when they are exposed to these environments. SOMF ¶ 3; Ex. 2, Kahatapitiya Expert Report, at 3. An IDLH environment is "an atmosphere that poses an immediate threat to life, would cause irreversible adverse health effects, or would impair an individual's ability to escape from a dangerous atmosphere." Ex. 15, DC FEMS Respiratory Protection Plan, at 5. The SCBA is a tight-fitting, positive pressure respirator that provides the user with clean air from a cylinder that the user carries on their back. SOMF ¶ 4; Ex X, Kahatapitiya Supplemental Report,

9

at 2.  A loose seal between the firefighter's face and the facepiece that connects to the SCBA will cause the air stored in the cylinder to deplete faster and cause the air from the surrounding IDLH environment to leak into the mask.  Ex. 2, Kahatapitiya Expert Report, at 4; Ex 3, Kahatapitiya Supplemental Report, at 1.  Therefore, a bearded individual who dons an SCBA will not be protected when entering IDLH environments.  Ex. 16, Kahatapitiya Dep., at 27:19-22

A firefighter who dons a negative pressure respirator with a loose seal faces similar risks.  Negative pressure respirators filter contaminants from the ambient air before the air enters the firefighter's respiratory system.  SOMF ¶ 7; Ex. 3, Ex. 3, Kahatapitiya Supplemental, at 2.  Firefighters use these respirators to protect them from exposure to particulates, gases, vapors, and fumes.  *Id.*  Unlike the SCBA, negative pressure respirators cannot be used in IDLH environments.  SOMF ¶ 6; Ex. 3, Kahatapitiya Supplemental, at 2.

Examples of negative pressure respirators that DC FEMS firefighters use include N-95s, half-face air purifying respirators, and full-face, air purifying respirators.  SOMF ¶ 5; Ex. 3, Kahatapitiya Supplemental, at 2.  But here again a tight-fitting seal is needed for negative pressure respirators to ensure that contaminants from outside the mask do not pass through the seal and enter the firefighter's respiratory system.  SOMF ¶ 7; Ex. 3, Kahatapitiya Supplemental, at 2.

Pollard was removed from operations in September 2017 because he could not pass a fit test.  SOMF ¶ 21; Ex. 9, Dean Dep. 15:21-16:5, 23:18-24:7; Ex. 17, Def. Rog. Answers, ¶ 3.  Because Pollard could not pass a fit test, he could not safely perform any tasks that would require him to don a tight-fitting respirator.  DC FMS made multiple attempts to help Pollard pass the fit test.  Former Assistant Fire Chief David Foust testified that he witnessed one of Pollard's fit tests in 2018, and

> [the department] tried every size mask that the manufacturer provides. We also provided that padding that the manufacturer provides. And then we called -- we called the manufacturer to see if there was any type of mask that maybe we didn't have in stock or that was available or was compatible with the self-contained breathing apparatus that the fire department used at that time, and there was -- we exhausted all those avenues. There was nothing else to try.

SOMF ¶ 24; Ex. 10, Foust Dep. 12:10-13:3; *see also* Ex. 18, Foust Memo.

The hooded PAPR respirator is an alternative respirator which can protect a firefighter from many of the various toxins that they might encounter. Ex. 2, Kahatapitiya Expert Report, at 3. A hooded PAPR can be used without passing a fit test, Ex. 4, Egan Dep., 200:17-201:5, but hooded respirators "are not appropriate for [IDLH] atmospheres encountered and presumed to be present during fire response efforts." SOMF ¶¶ 15-16; Ex. 2, Kahatapitiya Expert Report, at 3. DC FEMS acquired hooded PAPR respirators on September 27, 2021, SOMF ¶ 14; Ex. 4, Egan Dep., 201:9-14, and subsequently returned Pollard to operations if he was willing to wear the hooded PAPR and accept its limitations. SOMF ¶¶ 28-29; Ex. 13, Operations Return Letter; Ex. 14, Email from Shawn Downs to Ellis Pollard (Mar. 1, 2022, 12:48 p.m.). Pollard is limited to working on an ambulance because he cannot safely wear a SCBA. SOMF ¶ 29; Ex. 14, Email Downs to Potter. As noted above, firefighters working in IDLH environments must don the SCBA which bearded firefighters cannot safely do. SOMF ¶ 6; Ex. 2, Kahatapitiya Expert Report, at 3; Ex. 16, Kahatapitiya Dep., at 27:19-22.

DC FEMS removed Pollard from operations to satisfy its compelling governmental interest in firefighter safety. The extraordinary efforts that DC FEMS took to give Pollard the opportunity to pass the fit test demonstrates that DC FEMS sought to ensure that Pollard could continue to work in operations while fully complying with his religious practices. But Pollard's inability to pass the fit test made that accommodation impossible without putting his safety at

11

risk.  Further, when DC FEMS acquired a respirator that Pollard could use to perform limited duties in operations, Pollard was offered an accommodation to return to operations using that respirator.  Therefore, from the date in which Pollard first failed his fit test, DC FEMS employed the least restrictive means to allow Pollard to continue to perform his duties as a firefighter while satisfying a compelling government interest in firefighter safety.

**III.     The District is Entitled to Summary Judgment on Pollard's Title VII and DCHRA Claims.**

Pollard also claims that DC FEMS's decision to remove him from operations because he could not pass a fit test, violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and the District of Columbia Human Rights Act.  D.C. Code § 2-1401 *et seq.*  But the District had a legitimate non-discriminatory reason for removing Pollard from operations and later when returning him to operations, limiting his duties.  For this reason, Pollard's claims under Title VII and DCHRA fail.

Title VII requires that "[a]ll personnel actions affecting employees . . . of the Government of the District of Columbia . . . shall be made free from any discrimination based on . . . religion . . .." 42 U.S.C. § 2000e-16(a).  Where a plaintiff relies on circumstantial evidence to establish a claim under Title VII, the Court invokes the three-step burden-shifting test of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1973).  Under this framework, a Title VII [or DCHRA] [6] plaintiff must first establish a *prima facie* case of discrimination; the defendant is then required to rebut the presumption of unlawful discrimination by offering a legitimate, non-discriminatory reason for its actions; and finally, the plaintiff then has an opportunity to prove the inadequacy of

---

[6]     In considering claims of discrimination under the DCHRA, Courts employ the same three-part, burden-shifting test articulated by the Supreme Court for Title VII cases. *Cain v. Reinoso*, 43 A.3d 302, 306 (D.C. 2012); *Hamilton v. Howard Univ.*, 960 A.2d 308, 313-14 (D.C. 2008).

the defendant's rebuttal by proving that the stated basis is not the actual reason but merely pretext for discrimination. *Id.*

Where a defendant has articulated a legitimate non-discriminatory reason for the challenged action, as it has here, the court need not determine if the plaintiff makes out a *prima facie* case. *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009). Rather, the court "need only resolve 'the ultimate factual issue'—whether the employee produced sufficient evidence for a reasonable jury to find the employer's justifications for the challenged action are merely pretext for underlying, unlawful discrimination." *Byrd v. District of Columbia*, 807 F. Supp. 2d 37, 72 (D.D.C. 2011) (*citing Jones*, 557 F.3d, at 678). The court evaluates whether a jury could infer discrimination from the plaintiff's *prima facie* case, any evidence the plaintiff presents to attack the employer's explanation, and any other evidence of discrimination available to the plaintiff. *Drewrey v. Clinton*, 763 F. Supp. 2d 54, 60-61 (D.D.C. 2011) (*citing Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 992-93 (D.C. Cir. 2002)). The court looks to the totality of the circumstances to assess the plaintiff's challenge to the employer's explanation. *Aka v. Wash. Hosp. Ctr.,* 156 F.3d 1284, 1289-91 (D.C. Cir. 1998).

As explained in Part II, above, Pollard was removed from operations in September 2017 because he could not pass a fit test. Pollard's failure to pass a fit test made it impossible for him to perform his full duties as a firefighter technician without risking his safety, and that of his fellow firefighters. Ex. 16, Kahatapitiya Dep., 19:2-6, 44:2-8. When the District acquired a respirator that could be used safely in non-IDLH environments, DC FEMS allowed Pollard to return to operations but limits his duties to calls that do not require wearing a SCBA. SOMF ¶¶ 28-29; Ex. 13, Return to Operations Letter.

Further, the record is bereft of any evidence that DC FEMS's decision to remove Pollard from operations was motivated by anything other than concerns about his safety and the safety of his fellow firefighters.

## CONCLUSION

For these reasons, the Court should grant summary judgment in the District's favor.

April 5, 2022

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPLAND
Deputy Attorney General
Civil Litigation Division

/s/ *Michael K. Addo*
MICHAEL K. ADDO [1008971]
Chief, Civil Litigation Division Section IV

*/s/ Martha J. Mullen*
MARTHA J. MULLEN [419036]
Senior Assistant Attorney General
202-724-6612; 202-805-7516 (mobile)

/s/ *John J. Bardo*
JOHN J. BARDO [1655534]
Assistant Attorney General
Civil Litigation Division
400 6th Street NW
Washington, DC 20001
202-724-6534
John.Bardo@dc.gov

*Counsel for Defendants*